# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| DONNA M. HAWKINS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|       v. | ) | CAUSE NO.: 2:13-CV-456-JEM |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Donna M. Hawkins on December 11, 2013, and a Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [DE 16], filed by Plaintiff on July 17, 2014. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On October 24, 2014, the Commissioner filed a response, and on November 5, 2014, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On November 22, 2010, Plaintiff filed an application for a period of disability and for disability insurance benefits ("DIB") with the U.S. Social Security Administration ("SSA"), and an application for disabled widow's benefits. Plaintiff claimed disability beginning January 20, 2010. Plaintiff's application was denied initially and upon reconsideration. On August 14, 2012, Administrative Law Judge ("ALJ") Edward P. Studzinski held a hearing at which Plaintiff, with an attorney, Plaintiff's friend, and a vocational expert ("VE") testified. On September 5, 2012, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant is the unmarried widow of the deceased insured worker and had attained the age of 50, and meets the non-disability requirements for disabled worker's benefits set forth in section 202(e) of the Social Security Act.

3. The prescribed period ends on November 30, 2015.

4. The claimant has not engaged in substantial gainful activity since January 20, 2010, the amended onset date. (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

5. The claimant had the following severe impairments: neuropathy, a possible rotator cuff injury, a history of leg clots, a history of hepatitis C, post traumatic stress disorder (PTSD), a panic disorder, depression, bipolar disorder, and a history of polysubstance abuse (20 CFR 404.1520(c) and 416.920(c)).

6. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

7. The claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently, with no limitations in sitting, standing, and/or walking throughout an 8 hour workday. The claimant can occasionally reach overhead with the bilateral extremities but should avoid concentrated exposure to extreme cold or unguarded hazardous machinery, as well as all exposure to driving and hazardous environments. The claimant is limited to work involving only simple, routine and repetitive tasks requiring no more than simple decision making with a choice among a limited number of anticipated options and not requiring creative solutions to novel situations and only occasional minor changes in the work setting in terms of workplace, work processes, and work product, and work in which the expectations remain relatively unchanged over the course of an average daily tour of duty. The claimant is further limited to work requiring no more than exercise of simple judgment, dealing more with things rather than people, concrete rather than the abstract, and work which involves no more than brief and superficial interaction with co-workers and supervisors as is common in unskilled work, and work which is not performed in extremely crowded or hectic environments.

8. The claimant is unable to perform any past relevant work (20 CFR 404.2565 and 416.965).

9. The claimant was 48 years old, defined as an individual closely approaching advanced age, on the alleged disability onset day (20 CFR 404.1563 and 416.963).

10. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

11. Transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding that the claimant is not disabled (20 CFR Part 404, Subpart P, Appendix 2).

12. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1569, 1569(a), 416.969, and 416.969(a)).

13. The claimant has not been under a disability as defined in the Social Security Act from January 15, 2007, through the date of the decision (20 CFR 404.1520(g) and 416.920(g)).

On October 22, 2013, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

Plaintiff was diagnosed with costochondritis and cervicalgia. She also developed pain in her right rotator cuff and bilateral shoulder pain. In May, 2012, examination of her shoulder revealed swelling, arthralgia, edema, decreased range of motion, bony tenderness, pain, swelling, and spasm

of the shoulders bilaterally.

In January, 2010, Plaintiff was hospitalized suffering from racing thoughts, grandiosity, and hallucinations. She was diagnosed with major depression, generalized anxiety disorder, and bereavement, with a GAF score of 20. After being discharged, she began mental health treatment and was diagnosed with bipolar disorder, cocaine abuse, and major depression.

Psychiatrist Rajnishpaul Kular, M.D., began treating Plaintiff in July 2011. He diagnosed her with major depression, recurrent, with questionable psychosis and PTSD. Dr. Kular completed two Mental Impairment questionnaires regarding Plaintiff's mental capacity, one on September 14, 2011, and the second on June 4, 2012. In both assessments, Dr. Kular indicated that Plaintiff has been diagnosed with depressive disorder and PTSD causing her to suffer from, among other things, pervasive loss of interest in almost all activities, decreased energy, anxiety, mood disturbance, difficulty thinking or concentrating, memory impairment, and occasional hallucinations or delusions. Dr. Kular opined that Plaintiff was seriously limited in her ability to sustain an ordinary routine without special supervision; to make work-related decisions; to complete a normal work week or workday without interruptions from psychologically-based symptoms; to perform at a consistent pace without an unreasonable number or length of rest periods; to accept instruction and respond appropriately to criticism; to get along with coworkers; to respond appropriately to changes in her work routine; to deal with normal work stress; to understand, remember, and carry out detailed instructions; to set realistic goals independently of others; to deal with the stress of semiskilled and skilled work; to travel to unfamiliar places; and to use public transportation. Dr. Kular reported that Plaintiff had mild limitations in activities of daily living and moderate limitations in social functioning and concentration, persistence, or pace, and her mental impairments would

cause her to miss more than four days of work per month.

On April 30, 2012, after Plaintiff walked into a house occupied by strangers , the residents called the police and she went to the emergency room. She reported confusion during the previous two weeks. She was admitted to the hospital and continued to demonstrate confusion, with mumbling and delusions.

In December, 2012, psychologist Victor Rini, Psy.D., evaluated Plaintiff for the agency. Plaintiff was unable to explain the similarities and differences between a poem and a statue, could not recall the name of her first grade teacher, and could not remember three household items after five minutes. Dr. Rini diagnosed Plaintiff with major depressive disorder, bereavement, and PTSD.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the

question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is

denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ did not properly evaluate the medical and mental health opinions in the record. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

**A.    Mental Health**

The ALJ concluded that several of Plaintiff's mental health disorders were severe impairments, but there were several errors in his consideration of these disorders.

1.    Drug and Alcohol Use

Plaintiff argues that the ALJ erred in his consideration of Plaintiff's drug and alcohol abuse. The Commissioner argued that any failure of the ALJ to follow the regulations was harmless because he found that Plaintiff is capable of functioning enough to work when she is not using alcohol or illegal drugs.

8

The regulations provide that the "key factor" for the ALJ "in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find a claimant disabled if he or she stopped using drugs or alcohol." SSR 13-2p, 2013 WL 621536, at *4 (Feb. 20, 2013). Even in cases where "substance abuse aggravated [a plaintiff's] mental illness," the abuse alone "does not prove that the mental illness itself is not disabling." *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006). Instead, in situations "when it is not possible to separate the mental impairment documented in the evidence, from the drug or alcohol abuse, then a finding of 'not material' would be appropriate." *Jarmon v. Barnhart*, No. 02 c 3702, 2004 WL 742080, at *8 (N.D. Ill. Mar. 31, 2004) (quotations and citations omitted). In this case, the ALJ repeatedly stated that during Plaintiff's period of abstinence, her mental health symptoms were less severe. However, he failed to address the parts of the record that indicate Plaintiff's continued mental health difficulties when she was not using drugs and alcohol. For example, even when on multiple medications and abstaining from drugs and alcohol, treatment notes indicate that Plaintiff often had a stressed mood, was experiencing nightmares, was regularly noted to have only fair insight and judgment, sometimes was hysterical or had a hard time remembering things, and was assessed with a GAF of no more than 50, indicating serious symptoms or serious impairments in functioning. Plaintiff also was diagnosed with PTSD during a time when she reported no drug or alcohol use. The Court cannot conclude that the ALJ's assessment of Plaintiff's mental health when she was not using drugs and alcohol was supported by substantial evidence. *See, e.g. Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1096 (N.D. Ill. 2012) ("The ALJ's determination that [the plaintiff] would not have a severe mental impairment if she stopped abusing drugs and

alcohol is not supported by substantial evidence . . . [because] [e]xamination of the ALJ's decision reveals that important evidence—evidence that cut against the ALJ's conclusion—was not adequately addressed.").

2. Plaintiff's Credibility

The Court is concerned with several other aspects of the ALJ's consideration of Plaintiff's mental health as well. Not only did the ALJ fail to address the evidence that Plaintiff still suffered severe mental impairments when not using drugs or alcohol, but the ALJ also emphasized notes in the record indicating that Plaintiff had some better days to support his conclusion that she does not suffer from the mental health limitations she claims. He noted that "notwithstanding her complaints" of "significant depressive symptoms," Plaintiff had some normal findings, including normal speech, logical thought process, and a lack of hallucinations, with generally intact memory, fair insight and judgment, and fair attention and concentration. Leaving aside that "generally intact memory" and only "fair" judgment and concentration are hardly indicators of perfect mental health, they are also not the entirety of the report from either that date or that time period. As described above, Plaintiff continued to display symptoms of mental health difficulties during this time period. The Seventh Circuit Court of Appeals has warned against this type of "cherry-picking" of mental health evidence, particularly because "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Instead, "[t]he very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011)*; see also Punzio*, 630 F.3d at 710 ("[A] person

who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition."); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("[S]ymptoms that 'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression. 'A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days.'") (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)).

The ALJ also discounted the severity of Plaintiff's mental health problems because of her noncompliance with treatment, neglecting to recognize that failure to comply with treatment may be a sign of mental disorder rather than a reason to discount its severity. As the Seventh Circuit has emphasized, "mental illness . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." *Kangail*, 454 F.3d at 630 (7th Cir. 2006); *see also Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) ("[P]eople with serious psychiatric problems are often incapable of taking their prescribed medications consistently."); *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) (listing cases). Furthermore, when considering non-compliance with treatment as a factor in determining whether a claimant's statements regarding her symptoms are credible, an ALJ is required make a determination about whether non-compliance with treatment is justified and develop the record accordingly. *See* SSR 96-7p, 1996 WL 374186 at *7 (July 2, 1996); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.")

11

(quoting SSR 96-7p).

In this case, the ALJ addressed Plaintiff's noncompliance but stated that "the diversity of these statements makes it difficult to reconcile them with one another to determine the primary reason, or reasons" for Plaintiff's noncompliance. The reasons he identified as inconsistent with one another were Plaintiff's lack of financial ability to afford her medications, Plaintiff losing, forgetting, or running out of her meds, and Plaintiff's statements that she sometimes self-medicates with illegal drugs and alcohol. Rather than inconsistent, these reasons appear very consistent with Plaintiff's alleged mental disabilities and financial difficulties. Furthermore, as the Seventh Circuit Court has described, "bipolar disorder can precipitate substance abuse, for example as a means by which the sufferer tries to alleviate her symptoms." *Kangail*, 454 F.3d at 629 (citing peer-reviewed psychiatric journal articles), and "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Avery v. Astrue*, No. 11 C 7471, 2012 WL 6692120, at * 9 (N.D. Ill. Dec. 19, 2012) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996); *Blankenship v. Bowen*, 874 F .2d 1116, 1124 (6th Cir.1989)).

For all of the above reasons, the Court is unable to conclude that the ALJ's conclusions about Plaintiff's mental limitations are supported by substantial evidence.

**B. Treating Psychiatrist**

Plaintiff also argues that the ALJ improperly assessed the opinion of treating psychiatrist Dr. Kular, who had been treating Plaintiff since July of 2011. "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345

F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Being "not inconsistent" does not require that opinion be supported directly by all of the other evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188, at *3 (July 2, 1996). To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Schmidt v. Barnhart*, 395 F.3d at 744.

Dr. Kular completed two mental health assessments. He reported that Plaintiff had a medically documented history of chronic affective disorder of at least two years duration and that Plaintiff will have one or two episodes of decompensation of at least two weeks duration in a twelve month period. Plaintiff's attorney argued that Dr. Kular's opinion supports a finding that Plaintiff meets Listing 12.04. The ALJ did not accept this part of Dr. Kular's opinions. He stated that the assessments are not supported by the rest of the evidence in the record, because, in the ALJ's opinion, when Plaintiff was not abusing drugs and alcohol, her "primary complaints relate to her depressive symptoms, yet she has few significant findings on repeated exam," and because Plaintiff did not experience what the ALJ considered an episode of decompensation after she had a change in her environment. Later in the opinion, the ALJ wrote that he generally agrees with Dr. Kular's assessment, and that, "[i]n fact, the only part of Dr. Kular's opinion which is not consistent with the evidence overall is his opinion that the claimant would likely be absent from work more than four days a month and that part of his opinion which suggests that the claimant's mental impairment(s) meet a listing." Not only does this appear to be dismissing the evidence in the record that would lead to a finding of disability, but the supposed inconsistencies do not, in fact, appear to be

13

inconsistent with the record. As described above, the ALJ's conclusion that Plaintiff showed few symptoms when not using drugs and alcohol is problematic and displays a misunderstanding of bipolar disorder. The other reasons given by the ALJ for disregarding specific portions of Dr. Kular's opinion also fail to stand up to scrutiny.

Plaintiff's regular attendance in outpatient treatment, often as much as weekly, would be likely to interfere with her work schedule for those four days per month, and the ALJ does not explain why Plaintiff might not also miss a day or two of work per month because of the symptoms that cause her to need such frequent therapy. Furthermore, as Plaintiff argues, there is evidence in the record that Plaintiff cancelled or failed to attend treatment sessions, sessions that were less frequent, less demanding and of shorter duration than even a single day of work.

Similarly, no doctor opined that Plaintiff was expected to undergo an episode of decompensation after the change in environment referred to by the ALJ, and the Court notes that the record does include some indications that during the change in environment Plaintiff reported difficulties in performing activities of daily living, one manifestation of an episode of decompensation, raising concerns that the ALJ was substituting his own medical opinion for the evidence in the record. *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *see also Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

Although medical evidence, including that from a treating physician, "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight*, 55 F.3d at 314 (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions," *O'Connor-Spinner*, 627 F.3d at 618. The ALJ failed to build that

logical bridge in this case, leaving the Court unable to follow the reasoning behind the ALJ's conclusion that the opinion of treating psychiatrist Dr. Kular is unsupported by other evidence in the record, a problem that is particularly concerning given the importance of treating physician opinions on issues of residual functional capacity. *See, e.g,. Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96–5p, 1996 WL 374183, at *5 (July 2, 1996)) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it."); *Punzio*, 630 F.3d at 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision.").

The ALJ has also failed to draw a logical bridge between the RFC and his explanation that he accepted most of Plaintiff's limitations as opined by Dr. Kular. Dr. Kular opined that Plaintiff had significant limitations in many areas of mental functioning related to the ability to hold down a job, including dealing with normal work stress, setting realistic goals, and completing a normal workweek or workday without interruptions from psychologically-based symptoms. Although the ALJ put significant limitations on the type of work and workplace environment in the RFC, he did not explain how the RFC accounted for these serious disabilities.

In addition, the Court is concerned with the ALJ's reference to Plaintiff's activities of daily living. Although he did not explicitly equate Plaintiff's daily activities with the ability to work, the ALJ opined that her daily activities both make her less than credible and indicate that she is less

15

disabled than she claims. However, the Court cannot follow the ALJ's reasoning. For example, the fact that Plaintiff needed reminders to brush her teeth and shower does not seem consistent with the ability to care for herself, let alone to work. The Seventh Circuit has repeatedly criticized credibility determinations that are based on a plaintiff's ability to take care of his personal hygiene, children, or household chores, as these alone are not sound bases for a credibility determination. *See, e.g., Moss*, 555 F.3d at 562 ("An ALJ cannot disregard a claimant's limitations in performing household activities. The ALJ here ignored [the plaintiff]'s numerous qualifications regarding her daily activities."); *Zurawski*, 245 F.3d at 887 ("While the ALJ did list [the plaintiff]'s daily activities, those activities are fairly restricted . . . and not of a sort that necessarily undermines or contradicts a claim of disab[ility]."). In this case, there is no evidence that Plaintiff can, for example, take care of her personal hygiene on her own, and the ALJ has failed to explain how Plaintiff's inability to remember to brush her teeth means that she is able to work. On remand, the ALJ is reminded of the need to consider the record as a whole when making his credibility determination and to properly consider how her limited daily activities support her allegations of disabling limitations.

**C.     Physical Impairments**

Plaintiff argues that the ALJ improperly relied on the opinion of the state agency physician in finding that Plaintiff was capable of performing light work. Plaintiff argues that additional information about Plaintiff's physical impairments was added to the record after the state agency physician assessed Plaintiff's RFC, which was the assessment that the ALJ relied upon, and that the ALJ erred in failing to submit the new evidence to a state agency physician to review. The Commissioner argues that the ALJ must only require an additional expert opinion when new evidence might change his opinion, and that all of the findings cited by Plaintiff were in the record

16

reviewed by the state agency physician.

This matter is being remanded for the reasons described above. On remand, the ALJ is reminded of his responsibility to fully develop the record, *see, e.g., Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009), and to submit any "new and potentially decisive medical evidence" to medical review. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014).

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [DE 16] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 31st day of March, 2015.

                                        s/ John E. Martin
                                        MAGISTRATE JUDGE JOHN E. MARTIN
                                        UNITED STATES DISTRICT COURT

cc:     All counsel of record